## Opinion to the House of Representatives.

JANUARY 10, 1958.

PRESENT: Condon, C. J., Roberts, Andrews and Paolino, JJ.

Opinion to the House of Representatives in answer to request for an opinion relating to the qualification to vote of person residing at a state institution.

January 10, 1958

To the Honorable, the House of Representatives
of the State of Rhode Island and
Providence Plantations

We have received from the honorable house of representatives a resolution requesting, in accordance with the pro-

visions of section 2 of article XII of amendments to the constitution of this state, our written opinion upon the following question:

"Is a person who by reason of age or physical disability residing at a state institution a pauper as set forth in article XXIV of the amendments to the constitution?"

We assume that by the words "residing at a state institution" is meant one who has been admitted by the state department of social welfare to the state infirmary in accordance with general laws 1938, chapter 69, §20, as amended by public laws 1942, chap. 1212, art. III, sec. 2. Chapter 69 was originally entitled "Support and discipline of paupers" but is now entitled "Support of the needy" by virtue of the express provision of P. L. 1942, chap. 1212, article III, section 1. Apparently this was done to remove the technical concept of "pauper" from the law consistently with the amendment of §20 which relieved the several towns from any obligation to maintain needy persons having a legal settlement in any such towns after the effective date of the amendment, June 30, 1942. Two years later the general assembly gave further proof of its intention to abolish the long-established pauper statutes of the state by the enactment of P. L. 1944, chap. 1505, sec. 24, which expressly repealed G. L. 1938, chap. 68 entitled "Settlement Of Paupers" and chap. 70 "Keeping Out And Removing Paupers."

Public laws 1944, chap. 1505, established a new system of providing public assistance "to any person in Rhode Island who is in need." Section 3 expressly provided that such assistance "to needy individuals who have attained the age of 65 years; and who are not inmates of a public institution at the time of receiving assistance shall be designated as 'Old age assistance.' " Significantly such assistance was not termed "pauper" relief. Indeed the general assembly took pains to further emphasize that it was not such relief

by providing in sec. 21: *"Recipients not Paupers.* No person receiving assistance under this act shall be deemed a pauper by reason thereof." In our opinion, by expressly repealing in said chapter 1505 chapters 68 and 70 of the general laws relating to paupers, it was the intention of the general assembly to banish from our statutes the concepts of "pauper" and "pauperism" as they were so long recognized here extending back to early colonial times.

A pauper technically was a poor person receiving aid and assistance from a particular town in accordance with certain provisions of law for the maintenance and support of the poor. But not every poor person in a town was entitled . to support as a pauper. Right to such support had to be first established in accordance with certain rules of settlement. In this state such rules were expressly prescribed by G. L. 1938, chap. 68, which as pointed out above has been repealed. Because *settlement* was of fundamental importance in saddling a town with the burden of pauper relief, great efforts were made by the several towns to avoid having persons charged upon them for support. For this reason certain statutes were enacted to assist towns in this regard. General laws 1938, chap. 70, entitled "Keeping Out And Removing Paupers," now repealed, was a necessary part of the pauper laws.

At the time of the adoption of the state constitution in 1842 the term pauper was well understood. It connoted a person who had met all the qualifications prerequisite to claiming support from the town, who was receiving such support, and who was recognized as a pauper in a technical sense. The framers of the constitution placed such a person under political disability by providing in art. II, sec. 4, that "no pauper * * * shall be permitted to be registered or to vote * * *." And when that section was amended by the adoption of article XXIV of amendments such prohibition was retained.

In our opinion the term pauper as it was understood in 1842 does not apply to one who has not been legally determined to be a pauper in accordance with the provisions of law which were then in effect but which no longer prevail. Therefore, our answer to the question propounded is that "a person who by reason of age or physical disability residing at a state institution," such as the state infirmary, in accordance with the provisions of G. L. 1938, chap. 69, §20, as amended, is not a pauper within the meaning and intent of article XXIV of amendments to the constitution of this state.

FRANCIS B. CONDON
THOMAS H. ROBERTS
HAROLD A. ANDREWS
THOMAS J. PAOLINO